UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOORE, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON et al. <br><br> Defendants. | 24 Civ. 6405 (DEH) <br><br> **OPINION** <br> **AND ORDER** |

DALE E. HO, United States District Judge:

Currently before the Court is Defendants Johnson & Johnson ("J&J"), Vanessa Broadhurst, and Howard Reid's (collectively, "Defendants") Motion to Dismiss Plaintiff Lauren Moore's Complaint. *See* ECF No. 28. Moore, who served as an executive in J&J's corporate and social responsibility practice before being terminated in January 2024, brings her Complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq. See* Compl. ¶ 1, ECF No. 1. Her claims sound in discrimination, harassment, hostile work environment, and retaliation. *See id.* Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6), and 12(b)(2).[1] *See* Mot. to Dismiss at 1, ECF No. 28; Defs.' Mem. of L. in Supp. of Joint Mot. to Dismiss ("Defs.' Mem.") at 1-3, ECF No. 35. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED IN PART**. Moore's Title VII claim is not properly heard in this District and shall be **TRANSFERRED** to the United States District Court for the District of New Jersey. Moore's NYSHRL and NYCHRL claims are **DISMISSED**.

---

[1] All subsequent references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

## BACKGROUND

The following section is drawn from the facts alleged in the Complaint, which are taken as true and construed in the light most favorable to Moore for purposes of this motion, as well as from documents attached to, and incorporated by reference in, the Complaint. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). Because Defendants move to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), the Court also recites facts from the parties' affidavits, again construing those facts in the light most favorable to Moore.[2] *See, e.g.*, *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008) ("A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is inherently a matter requiring the resolution of factual issues outside of the pleadings and all pertinent documentation submitted by the parties may be considered in deciding the motion."); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012) ("Where, as here, a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), a court may consider evidence outside of the four corners of the complaint, including affidavits and other documentary evidence.").

In October 2015, Moore accepted an offer to work for J&J, "a company incorporated in the State of New Jersey" that has "its principal place of business in New Brunswick, New Jersey." Compl. ¶¶ 17, 32. Though Moore moved to New York City after accepting the role at J&J, *see id.* ¶ 32, she was "based as an employee at the Company's World Headquarters, in New Brunswick, New Jersey," Moore Decl. ¶ 4, ECF No. 48. During all times relevant to this litigation—that is, from when Defendant Broadhurst became Moore's supervisor in January 2022 through Moore's termination in January 2024—Moore's "official Company office of record was in New Brunswick." *Id.* ¶ 4; *see also id.* ¶ 11.

---

[2] To be clear, the Court does not rely on facts asserted in the parties' affidavits to resolve the portion of Defendants' Motion under Rule 12(b)(6).

Notwithstanding the working arrangement described above, after the COVID-19 pandemic, Moore did not work exclusively at J&J's world headquarters in New Jersey ("WHQ"). *See id.* ¶¶ 12-13. Instead, as part of J&J's post-COVID return-to-work policy, she worked "three days of the week in a J&J office" and "two days remotely from [her] home" in New York City. *Id.* ¶ 12. Specifically, Moore's "typical working schedule for J&J following the pandemic was as follows: two days per week working from the WHQ, New Jersey office; and three days per week working in New York City, either working remotely from [J&J's] New York City office (at least one day per week, in order to satisfy the three-day-in-office requirement) or remotely from [her] home office." *Id.* ¶ 21. J&J disputes Moore's assertion that she worked "at least one day per week" from a J&J office in New York City, noting that "[t]he security report logs for Moore demonstrate that . . . she did not go to any New York City space [maintained by J&J] one time a week for every week of 2021, 2022, or 2023." Harrisingh Reply Decl. ¶ 5, ECF No. 53.

The substance of Moore's Complaint is that she was treated unfairly by her Black supervisors, Defendants Broadhurst and Reid, because she is a White woman. After Broadhurst became her supervisor, Moore, who had until that point earned "positive and encouraging" feedback from her superiors, Compl. ¶ 51, was unable to maintain her positive performance record, *see id.* ¶¶ 53, 56, 80. From the beginning of their relationship, "Moore felt as though Broadhurst was on a mission to pressure [her] to leave J&J." *Id.* ¶ 62. To that end, Broadhurst spoke to Moore in a manner that was "unnecessarily disrespectful, sharp, and dismissive" in a June 2022 meeting with other members of their leadership team, insinuating that Moore's job did not require skill or specialized experience. *Id.* ¶¶ 64-65. This meeting took place at WHQ in New Jersey, and both women were physically present. *See* Broadhurst Reply Decl. ¶ 9(i), ECF No. 54. Moreover, at a February 2023 meeting at WHQ at which both women were present, *see id.* ¶ 9(iii), Broadhurst "bitterly complained" that there were "too many white women" on the leadership team, Compl. ¶

3

74. Broadhurst subsequently gave Moore a negative review of her 2022 job performance, *see id.* ¶ 80, purportedly in an "attempt to force her out" of J&J, *id.* ¶ 89. During this meeting, Broadhurst was physically present at J&J's New Jersey headquarters. *See* Broadhurst Reply Decl. ¶ 9(iv).

In March 2023, Broadhurst informed Moore that Reid would become her immediate supervisor. *See* Compl. ¶ 109. Broadhurst was in New Jersey when she decided that Moore would report to Reid, and she was at WHQ when she told Moore that Reid was to be her supervisor. *See* Broadhurst Reply Decl. ¶ 9(v). Moore was "in [her] home office in New York City . . . when Broadhurst informed [her] by phone that Reid would be [her] new supervisor." Moore Decl. ¶ 33. Though Broadhurst promised Moore that "this change would not impact [her], as her role, responsibilities, and title would all remain the same," Compl. ¶ 110, Reid was eventually "assigned to handle matters and lines of responsibility that Moore had been managing." *id.* ¶ 116. Moore was, therefore, "for all intents and purposes demoted." *Id.* ¶ 117. Moore claims that Broadhurst "sidelined" her by promoting Reid, who, "by his own admission, . . . had no background, expertise, or experience" doing corporate social responsibility work. *Id.* ¶¶ 111, 122.

In June 2023, Moore sent an email to Broadhurst and to J&J's chief human resources officer outlining her concerns about Broadhurst and accusing J&J of "unfair, discriminatory, and retaliatory treatment." *Id.* ¶ 123. J&J subsequently launched an internal investigation into Moore's allegations, which was "led by outside counsel." *Id.* ¶ 127. Moore alleges that although the investigation was initially launched to explore her claims against Broadhurst, it eventually turned "vindictive," focusing not on Moore's allegations but instead on anonymous complaints *against* Moore by two employees "alleg[ing] favoritism, . . . fear of retaliation, and a perceived lack of direction and strategy" on Moore's team. *Id.* ¶¶ 128-29. Moore claims that J&J launched this investigation "in an apparent attempt to scare her off and establish putative grounds for attacking her work, and eventually terminating her." *Id.* ¶ 128. In other words, the investigation was

"punish[ment]" "for having come forward with her complaints of hostile work environment, discrimination, and retaliation." *Id.* ¶ 139. Ultimately, in January 2024, Moore was told in a virtual meeting "that the investigation had concluded and that it had been determined that her claims of discrimination . . . were 'not substantiated.'" *Id.* ¶ 170; Moore Decl. ¶ 36. Moore was in New York City for this meeting. *See* Moore Decl. ¶ 36.

In September 2023, Moore was informed that, as part of a corporate reorganization, the team she led was being combined with another team. *See* Compl. ¶ 146. As a result of this restructuring, she was given a "new role." *Id.* ¶ 147. Moore describes the new role as "a substantial demotion," but acknowledges she was permitted to maintain the same "pay and benefits" through the end of that year. *Id.* ¶¶ 147-48. The "reorganization . . . further elevated Reid," whose "new role further usurped [Moore's] responsibilities and areas of expertise." *Id.* ¶ 149. To the extent Broadhurst was involved in any related decisions, she was in New Jersey. *See* Broadhurst Reply Decl. ¶ 9(viii). To the extent Reid was involved in any restructuring decisions, he was either in New Jersey or Pennsylvania. *See* Reid Reply Decl. ¶ 3(iii), ECF No. 55.

Later that year, in December, Reid scheduled a virtual meeting to give Moore her 2023 performance review. *See* Compl. ¶¶ 160-61. Reid prepared Moore's performance review in New Jersey and attended the meeting from his home in Pennsylvania, *see* Reid Reply Decl. ¶ 3(v); Moore attended the meeting from New York City, *see* Moore Decl. ¶ 35. The review was partially negative. *See* Compl. ¶¶ 161-62. Moore disputed Reid's negative assessment of her work, telling him that she "respectfully disagree[d]" with his critical feedback and describing herself as "not fully aligned with" it. *Id.* ¶¶ 164-65. Though the meeting ended on a "professional and collegial note," *id.* ¶ 167, the following month, in January 2024, Reid terminated Moore, *see id.* ¶ 172. Reid told Moore that "because . . . [she] had not been aligned" with his performance rating, "he no longer believed he could work with her." *Id.* This meeting was also held virtually—Moore joined

5

from "her home office" in New York City, *id.* ¶¶ 171-72, and Reid joined from New Jersey, *see* Reid Reply Decl. ¶ 3(vi). Reid made "the business decision . . . to terminate Moore's employment" "in New Jersey and Pennsylvania, not New York." Reid Decl. ¶ 12, ECF No. 33.

## LEGAL STANDARDS

### I. Rule 12(b)(3) Motion to Dismiss

"[O]n a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *GE Renewables N. Am., LLC v. SFK USA Inc.*, No. 23 Civ. 9274, 2025 WL 437890, at *2 (S.D.N.Y. Feb. 7, 2025) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)). "In ruling on a motion to dismiss for improper venue under Rule 12(b)(3), the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in that party's favor." *Stonegardens Advisory LLC v. DeepMedia.AI*, No. 24 Civ. 2178, 2024 WL 5047628, at *8 (S.D.N.Y. Dec. 9, 2024). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of venue." *Id.* "Upon a finding of improper venue, a court 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Abalu v. Soc'y of Hum. Res. Mgmt.*, No. 24 Civ. 5917, 2025 WL 1019199, at *11 (S.D.N.Y. Apr. 4, 2025) (quoting 28 U.S.C. § 1406(a)). This decision—dismissal or transfer— "lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

### II. Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true

and drawing all reasonable inferences in the plaintiff['s] favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Rubenstetn v. Ishizuka*, No. 23 Civ. 4332, 2025 WL 1489375, at *2 (S.D.N.Y. May 23, 2025) (quoting *Bell Atl. Corp.*, 550 U.S. at 558).

### III. Rule 12(b)(2) Motion to Dismiss

"On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff must 'make a prima facie showing that jurisdiction exists.'" *Rubenstetn*, 2025 WL 1489375, at *3 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)). A court employs the same standard of review in adjudicating a motion to dismiss brought under Rule 12(b)(2) as it does a motion to dismiss brought under Rule 12(b)(3). *See Abalu*, 2025 WL 1019199, at *11. That is, the court draws all reasonable inferences and resolves all factual conflicts in the plaintiff's favor. *See id.* And when the court relies on affidavits and pleadings to decide a Rule 12(b)(2) motion to dismiss, "the plaintiff need only make a prima facie showing" that the court has personal jurisdiction over the defendants. *GE Renewables*, 2025 WL 437890, at *2 (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "A plaintiff must both 'have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process.'" *GE Renewables*, 2025 WL 437890, at *2 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018)).

## DISCUSSION

### I. Defendants' Rule 12(b)(3) Motion to Dismiss

Moore's Title VII claim is specific to J&J. *See* Compl. ¶¶ 197-206. J&J moves to dismiss Moore's Title VII claim for improper venue. Title VII claims are "strictly governed by 42 U.S.C. § 2000e-5(f)(3)," *Cook v. UBS Fin. Servs, Inc.*, No. 05 Civ. 8842, 2006 WL 760284, at *3 (S.D.N.Y. Mar. 21, 2006), which states that actions under the statute may be brought:

- "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"

- "in the judicial district in which the employment records relevant to such practice are maintained and administered"

- "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice"

- or "within the judicial district in which the respondent has his principal office," but only "if the respondent is not found within any [district listed above]"

42 U.S.C. § 2000e-5(f)(3).

Neither party disputes that Section 2000e-5(f)(3) is the controlling venue statute in Title VII claims. *See* Defs.' Mem. at 1; Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 6 n.3, ECF No. 47. And the parties agree that the employment records relevant to Defendants' alleged discriminatory employment practices are not kept in this District, nor is J&J's principal office in this District. *See* Defs.' Mem. at 14; Pl.'s Opp'n at 1, 7, 10. Therefore, the question before the Court is whether, with respect to Title VII, Moore has adequately pleaded either (A) that J&J "committed" unlawful discrimination and retaliation in New York[3] or (B) that

---

[3] "The Courts of this Circuit have construed the Title VII venue provision to mean that venue is not limited to the particular district in which the alleged unlawful acts occurred, but rather that venue is proper, as the plain language of the statute provides, in *any* judicial district *in the State* in which the alleged unlawful acts occurred." *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 495 (S.D.N.Y. 2011) (emphasis in original).

Moore would have continued to "work in" this District but for J&J's unlawful discrimination and retaliation.

### A. Did Defendants Commit Unlawful Discrimination in this District?

Moore accuses J&J of unlawful employment discrimination and retaliation in violation of Title VII. *See* Compl. ¶¶ 197-206. To substantiate this claim, Moore points to, *inter alia*, receiving racially discriminatory comments from J&J management (that is, Broadhurst), which contributed to a hostile work environment, *see id.* ¶ 200; losing job responsibilities and a team of employees to supervise, with much of the former having been given to Reid; being given negative performance reviews from both Broadhurst and Reid, *see id.* ¶¶ 116-17; being investigated for her employees' complaints against her, purportedly in retaliation for reporting and complaining about discrimination, *see id.* ¶ 201; and ultimately being terminated from her job, *see id.* ¶ 128. Even accepting each allegation as true, Moore must prove that Title VII relief is available even though the discriminatory acts described above took place in New Jersey.

Anticipating this challenge, Moore argues that J&J "committed" an "unlawful employment practice" in "a[] judicial district in" New York because she "experienced" the "effects of [J&J's] decisions or actions" here. Pl.'s Opp'n at 7. That argument fails. As an initial matter, it does not comport with the natural meaning of the word "committed." Both the common and the legal definitions of the word "commit" seem to require that Defendants acted in New York in order to fall within the ambit of the first base of Title VII's venue statute. The Oxford English Dictionary's entry for "committed" describes the word as referring to "an act . . . that has been done, performed, or carried out." *Committed*, Oxford English Dictionary, https://www.oed.com/dictionary/committed_adj?tab=meaning_and_use#8748176 (last visited June 20, 2025). Black's Law Dictionary defines "commit" as, *inter alia*, "to perpetrate (a crime)." *Commit*, Black's Law Dictionary (12th ed. 2024). But Moore does not claim that J&J took any

9

action *in* New York that resulted in her being discriminated or retaliated against, or that resulted in her being fired. It is difficult to understand how something can be "done" or "performed" or "carried out" or "perpetrate[d]" in a place where the person or entity accused of taking that action is not present.

Moore also cites no authority that is binding on this Court supporting her (creative) reading of the statute—that is, that an act of discrimination is "committed" where it is "experienced." And while she does cite a case decided in this District that appears to support her an interpretation of the statute, that case is distinguishable. In *Kumar v. Opera Solutions OPCO, LLC*, the court found venue proper in this District based, *inter alia*, on several factors not present here, including that the plaintiff there "worked remotely for long periods of time," only "occasionally" went "into her employer's New Jersey office," and was "designated" in her employer's "internal system" "as a New York-based employee." No. 20 Civ. 6824, 2021 WL 4442832, at *1 (S.D.N.Y. Sept. 28, 2021). In contrast, Moore, by her own admission, did not "work[] remotely for long periods of time"; she typically worked at WHQ at least twice per week. *See* Moore Decl. ¶ 21. And J&J characterized her internally as a New Jersey-based employee, not as an employee based in New York. *See, e.g.*, Harrisingh Decl. ¶ 12, ECF No. 31 ("Moore was hired to work in New Jersey, was an employee assigned to J&J HQ, and . . . was a New Jersey-based employee throughout the entirety of her employment."). Moore does not allege anything to the contrary.

The *Kumar* court also noted that "Defendants made decisions adverse to [plaintiff's] employment interests in New York." 2021 WL 4442832, at *17. Here, however, Moore fails to allege anything analogous. In *Kumar*, the defendants "targeted numerous discriminatory communications to [plaintiff] knowing that she was located in New York." *Id.* But here, the only discriminatory comment allegedly directed at Moore—Broadhurst saying that "there are too many white women on this team"—was made at a meeting in New Jersey where both women were

10

physically present. Broadhurst Reply Decl. ¶ 9(iii). For these reasons, *Kumar* is distinguishable, cutting against this Court finding that J&J "committed" unlawful employment practices in New York.

The other out-of-District cases Moore cites are either distinguishable or unpersuasive. In *Hale v. Iancu*, the parties did not dispute that venue was proper in the district within which that plaintiff chose to file his Title VII suit, the District of Connecticut, where that plaintiff resided and "was working . . . at the time of his termination." No. 19 Civ. 1963, 2021 WL 9405460, at *3 (D. Conn. Feb. 23, 2021). The District of Connecticut was the proper venue because, *inter alia*, the plaintiff exclusively worked remotely and "did not physically work in Virginia," where his supervisors were located, "at any time relevant to the case." *Id.* at *2. Here, by contrast, Moore worked from WHQ at least twice a week, *see* Moore Decl. ¶ 21, and the parties dispute her contention that she "was working" in New York "at the time of [her] termination," *see infra* Section I.B.

Moore also cites *Lewis v. Affiliated Enter. Sols, LLC*, No. 24 Civ. 61, 2024 WL 1652460, at *5 (N.D.N.Y. Apr. 17, 2024), *appeal docketed*, No. 24-1338 (2d Cir. May 17, 2024), in support of her venue argument. *See* Pl.'s Opp'n at 8 (arguing that *Lewis* credited the plaintiff's argument "that venue was proper because he was working remotely from his home in the district"). But the procedural posture in which *Lewis* was decided—a district court's adoption of a magistrate judge's report and recommendation that plaintiff's complaint be *dismissed* with leave to amend, *see* 2024 WL 1652460, at *1—makes it hard to conclude that the court's decision actually supports Moore's argument here. In fact, with respect to venue, the *Lewis* court stated in *dicta* that, "if [p]laintiff files an amended complaint, he is directed to include facts regarding his remote work as appropriate to establish venue," *id.* at *5, suggesting that the existing allegations in the case were *not* sufficient to establish venue was proper in that district. The line from *Lewis* quoted by Moore, which merely

11

suggests that the plaintiff's claim could be properly pleaded, is not only unauthoritative but also unhelpful.

The one case Moore cites that does squarely support her claim is *Wiley v. Paulson*. In *Wiley*, the court read Title VII's venue provision as finding venue proper "in the place where the effects of employment decisions were felt." No. 06 Civ. 172, 2007 WL 9718901, at *3 (E.D.N.Y. July 23, 2007). No court in this District has adopted that reasoning. The Second Circuit has not endorsed it, either. This Court, therefore, declines to follow *Wiley*'s reading of Title VII's venue statute as well, because the plain language of Section 2000e-5(f) suggests that Title VII cases should be brought in the state where a discriminatory act is "committed," *see, e.g.*, *Russel-Brown v. Univ. of Fla. Bd. of Trs.*, No. 09 Civ. 2479, 2009 WL 4798230, at *2 (D.N.J. Dec. 7, 2009) ("[T]he plain language of 42 U.S.C. § 200e-5(f)(3) . . . clearly defines the bases for venue and . . . is unambiguous."), and this Court is bound to adhere to the unambiguous language of the statute, *see, e.g.*, *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072-73 (2d Cir. 1993) ("[W]hen looking at its language, a court should presume that the statute says what it means. If the words of a statute are unambiguous, judicial inquiry should end, and the law interpreted according to the plain meaning of its words.").

For the reasons explained above, Moore's Title VII claim is not properly heard in this District, or in any district in New York, on the basis of J&J having "committed" discrimination against her in this state. Every allegation Moore makes involves an action taken or decision made by Defendants in New Jersey. Moreover, Moore cites no cases standing for the proposition that, because she worked remotely from home in New York approximately twice a week (thus felt some of the effects of the alleged discrimination in this state), her Title VII claim is properly heard here.

12

### B. Would Moore Have Worked In this District But For Being Fired by Defendants?

Title VII's venue provision allows actions to be brought "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Moore claims that, because she "worked primarily from NYC during the employment period in which she claims that the discrimination and retaliation occurred" and because "Defendants were aware of and approved of her working from New York," "[i]f Defendants had not fired Moore, she would have continued to work for J&J primarily in NYC under the remote work arrangement." Pl.'s Opp'n at 10. She rejects Defendants' argument that she "would have continued to be 'assigned' to J&J HQ in New Brunswick if she had not been terminated," arguing instead that "the situs of work—where the plaintiff actually worked and performed her job" is what "is relevant for venue purposes." Pl.'s Opp'n at 11. Thus, she says, she satisfies the Title VII's third venue base.

While this is a close case, the Court holds that Moore did not "work" in New York within the meaning of the word in Section 2000e-5(f)(3). To be sure, with the rise in telecommuting and other flexible working arrangements after the onset of the COVID-19 pandemic, determining where the plaintiff in a Title VII suit "worked" is not as straightforward an inquiry as it was when Section 2000(e) was enacted. And Moore's functionalist approach has some intuitive appeal. But there is no authority—binding or otherwise—establishing that an employee who *sometimes* worked remotely should be considered to have "worked" in that remote location (even if she worked there remotely most of the time). Instead, the cases Moore cites all concern plaintiffs who worked remotely *one hundred percent of the time*. *See Hale*, 2021 WL 9405460, at \*2; *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 256 (W.D.N.Y. 2018) (describing the case of a plaintiff who worked for a New Jersey-based employer that "expressly agreed to Plaintiff 'continuing to live and work in Rochester, New York'" and "repeatedly told [her] that she 'did not need to come'"

13

to the employer's offices in New Jersey); *Thomas v. EOTECH, LLC*, No. 23 Civ. 3313, 2024 WL 5239487, at *4 (D. Md. Dec. 27, 2024) ("[Plaintiff] performed her job remotely from her home in Maryland and . . . she currently resides in Maryland. [Defendant] does not claim that [plaintiff's] work location was . . . [at its headquarters] in Michigan. In light of [plaintiff's] work arrangement, it is reasonable to infer that [she] 'would have worked' in Maryland 'but for' her termination.").

By her own admission, Moore worked at least two days per week at WHQ—that is, in New Jersey. *See* Moore Decl. ¶ 21. "Throughout [her] tenure at J&J, [Moore's] official Company office of record was in New Brunswick" at WHQ. *Id.* ¶ 4. It is undisputed that Moore's actual office was at WHQ, too, and that her executive administrative assistant also worked there. *See, e.g.*, Harrisingh Decl. ¶ 11. Moore's J&J-provided office and cellular phone numbers undisputedly both had New Jersey area codes. *See id.* ¶ 14. At all times Moore reported to Reid, "she was a full-time employee of J&J assigned to work [at] . . . 1 J&J Plaza" in New Jersey. Reid Decl. ¶ 11. And J&J never considered Moore a "remote employee" by J&J. *See, e.g.*, Broadhurst Decl. ¶ 12, ECF No. 32. In sum, traditional indicia of where one "works" lead this Court to conclude that Moore worked in New Jersey, not New York.

For the reasons discussed above—namely, that J&J did not "commit[]" any unlawful discrimination in New York and because this District is not where Moore "would have worked but for" her termination—this District is not the proper venue for Moore's Title VII claim.

## II. Defendants' Rule 12(b)(6) Motion to Dismiss

The Complaint states that "[t]his Court has supplemental jurisdiction over Moore's state and local statutory claims, pursuant to 28 U.S.C. § 1367(a), because such claims arise from the same or closely related conduct of the Defendants" underlying Moore's Title VII claim. Compl. ¶ 21. Having determined that Moore's Title VII claim should be transferred to New Jersey, the Court declines to exercise supplemental jurisdiction over her claims brought pursuant to the New

14

York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). *Cf.* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Moore's NYSHRL and NYCHRL claims are not cognizable under the Court's diversity jurisdiction, either, because the statutes under which the claims are brought do not provide a private remedy for out-of-state discrimination by foreign actors. Courts adjudicating claims brought pursuant to the NYSHRL apply an "impact test," which requires that they "look at the place where the impact of the alleged discriminatory conduct is felt to ascertain whether an employer can incur liability." *King v. Aramark Services Inc.*, 96 F.4th 546, 557 (2d Cir. 2024). Where such an impact has, "at most, a tangential connection to the state," the plaintiff's NYSHRL claim "must be dismissed." *Id.* "Similarly, New York courts have interpreted the NYCHRL as limiting the applicability of its protections to preventing discrimination within the City," and "[c]ourts apply an 'impact' test to determine whether 'discriminatory conduct had an impact within the City.'" *White v. ADP*, No. 22 Civ. 4800, 2024 WL 4979203, at *7 (S.D.N.Y. Dec. 4, 2024) (quoting *Rinaldi v. Nice, Ltd.*, No. 19 Civ. 424, 2021 WL 827767, at *8 (S.D.N.Y. Mar. 4, 2021)).

As explained *supra*, Moore did not work in New York. She worked in New Jersey. Defendants are not located in New York, nor did they make the relevant decisions in New York. They are located in New Jersey. Defendants took all actions and made all decisions relevant to this litigation there (or in Pennsylvania). Accordingly, any impact Moore felt in New York City and/or New York State was "tangential" or incidental. It is of no matter that Moore sometimes

15

worked remotely in New York—her NYSHRL and NYCHRL claims are not cognizable. *See, e.g.*, *Rinaldi*, 2021 WL 827767, at *9 ("Plaintiff's residence in the City is insufficient to establish that the impact of the alleged discrimination occurred in the City."); *King*, 96 F.4th at 558 ("The fact that [defendant] permitted [plaintiff] to do *some* of her work from her New York residence, and *some* of the discriminatory conduct [plaintiff] alleges took place while she was working from her New York home office, does not change our conclusion [that plaintiff's NYSHRL claims must be dismissed].") (emphasis in original); *White*, 2024 WL 4979203, at *8 ("[Plaintiff] was employed by a New Jersey corporation, with an office and desk in New Jersey. The acts in question were all performed by [Defendant's] employees in New Jersey or elsewhere. None of the discriminatory acts complained of were committed in New York. . . . And while [plaintiff] resided in New York and worked remotely from home in a continuous manner, these facts are not sufficient alone to warrant liability against a foreign defendant under New York law because any discriminatory impact felt in the state was incidental."). Therefore, Defendants' Motion to Dismiss Moore's NYSHRL and NYCHRL claims pursuant to Rule 12(b)(6) is **GRANTED**.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss is **GRANTED IN PART**. Based on Defendants' Rule 12(b)(3) and 12(b)(6) arguments, the Court holds that venue is not proper in this District. Therefore, pursuant to its authority under 28 U.S.C. § 1406(a), it is hereby ORDERED that this case be **TRANSFERRED** to the United States District Court for the District of New Jersey.

Because this case is being transferred, the Court does not reach Defendants' Rule 12(b)(2) arguments regarding personal jurisdiction.

Defendants Motion to Dismiss Plaintiff's NYSHRL and NYCHRL claims is **GRANTED**.

The Clerk of Court is respectfully requested to terminate ECF No. 28. The discovery-related motions at ECF Nos. 61 and 66 are **DENIED AS MOOT**; the Clerk of Court is also respectfully directed to terminate ECF Nos. 61 and 66.[4]

SO ORDERED.

Dated: July 7, 2025

    New York, New York

_____<br>
DALE E. HO<br>
United States District Judge

---

[4] The discovery dispute at ECF No. 61 pertains to Plaintiff's medical records. Defendants seek records related to, *inter alia*, treatments Plaintiff sought for severe emotional distress, as alleged in the Complaint. *See* ECF No. 61 at 2. Plaintiff says no such records exist because she did not seek or receive treatment for emotional distress in connection with this case. *See id.* Given that the records Defendants seek do not exist, their request for this Court to compel Plaintiff to produce such records is **DENIED AS MOOT**.

The request at ECF No. 66 is for the parties to have additional time to complete discovery. Discovery in this matter has been stayed pending resolution of Defendants' Motion to Dismiss. *See* ECF No. 71. Because this case is being transferred pursuant to this Order, the parties' extension request is **DENIED AS MOOT**. A decision regarding the case management plan, including the length of the remaining discovery period, if any, shall be left to the discretion of the District of New Jersey court to which this action is transferred.